UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15CV-00071-JHM

PAULETTE OWENS                                                                    PLAINTIFF

VS.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON                    DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Liberty Life Assurance Company of Boston, for application of the arbitrary and capricious standard of review [DN 15], an objection by Defendant to Magistrate Judge Brennenstuhl's January 19, 2016 Order granting in part Plaintiff's motion for leave to conduct discovery [DN 29], and motion by Defendant for leave to file supplemental authority [DN 37].  Fully briefed, these matters are ripe for decision.

I. BACKGROUND

Plaintiff, Paulette Owens, worked for Wal-Mart Associates, Inc. until April of 2013 when "physical restrictions and limitations" prevented her "from engaging in full-time gainful employment." (Complaint at ¶ 9.)  Plaintiff was a participant in the Wal-Mart Stores Inc. Associates' Health and Welfare Plan (the "Wrap Document" or "Wrap Plan").  The Wrap Plan was established in accordance with ERISA and includes various insurance programs offering coverage to Wal-Mart's employees.  Among the Wrap Plan's insurance programs is a long term disability plan ("LTD Plan").  Defendant, Liberty Life Assurance Company of Boston, issued the Group Disability Income Policy No. GF3-850-290765-01 (the "Policy") that funded the long term disability benefits under the LTD Plan.  The Policy is subject to Arkansas state insurance regulations.  (ADM 3 ("Governing Jurisdiction is Arkansas and subject to the laws of that

State.").) Liberty Life was also the LTD Plan's claims administrator during the relevant time period.

After Plaintiff ceased working in April of 2013, Liberty Life approved Plaintiff's claim for LTD benefits on November 8, 2013. On September 22, 2014, Liberty Life determined that Plaintiff was no longer disabled under the terms of the Policy and terminated her benefits effective November 1, 2014. On March 9, 2015, Liberty Life received an appeal letter from Plaintiff. On April 16, 2015, Liberty Life upheld its determination that Plaintiff was no longer disabled within the meaning of the Policy. Plaintiff brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that Defendant improperly denied her claim for long term disability insurance benefits under the terms of the Policy.

The issue now before the Court is which standard of review the Court should apply in its examination of Liberty Life's decision to deny Plaintiff's benefits. Liberty Life argues that the Court should apply the highly deferential arbitrary and capricious standard. Plaintiff argues for *de novo* review under which no deference would be given to Liberty Life's decision. The issue turns on whether the applicable plan documents grant Liberty Life discretionary authority and whether discretionary clauses in the insurance policy and plan documents survive Arkansas's discretionary clause ban.

## II. STANDARD OF REVIEW

A participant in or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan grants discretion to an administrator, the Court reviews the administrator's decision under the arbitrary and capricious standard. Wells v. U.S. Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1247 (6th Cir. 1991). The Sixth Circuit requires "that the plan's grant of discretionary authority to the administrator be 'express.'" Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996) (quoting Perry v. Simplicity Eng'g, 900 F.2d 963, 965 (6th Cir. 1990)). "Furthermore, even if a plan expressly vests discretion in an administrator, courts will only apply the arbitrary and capricious standard if it is the administrator itself who actually made the benefits revocation decision." Hawks v. Life Insurance Co. of North Am., 2015 WL 9451067, *1 (W.D. Ky. Dec. 23, 2015)(citing Sanford v. Harvard Indus., Inc., 262 F.3d 590, 597 (6th Cir. 2001)). "The plan administrator bears the burden of proving that the arbitrary and capricious standard applies." Shelby County Healthcare Corp. v. Majestic Star Casino, LLC, 2008 WL 782642, *3 (W.D. Tenn. Mar. 20, 2008) (citing Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002); Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 229-30 (2d Cir. 1995)), aff'd, 581 F.3d 355 (6th Cir. 2009). See also Rose v. Liberty Life Assurance Co. of Boston, 2016 WL 1178801, * 1 (W.D. Ky. Mar. 23, 2016).

### III. DISCUSSION

#### A. Discretionary Authority Under the Policy

Defendant maintains that it was granted discretionary authority to make benefit determinations with respect to claims for benefits under the LTD Policy and, as a result, the Court should apply the arbitrary and capricious standard of review. The Liberty Life Policy at issue in this case grants Liberty Life authority to determine eligibility for benefits. Specifically,

the Policy provides:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this plan and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this plan and benefit eligibility shall be conclusive and binding.

(Policy § 7 (ADM 42).) The Policy further provides that "Liberty reserves the right to determine if your Proof of loss is satisfactory." (Id. (ADM 43).) Plaintiff argues that despite the language of the Policy, Arkansas law prohibits discretionary clauses in disability income policies. Thus, according to Plaintiff, the language in the policy cannot operate to change the default *de novo* standard of review.

### 1. Discretionary Clauses and Rule 101

In 2002, the National Association of Insurance Commissioners ("NAIC") "promulgated Model Act 42, entitled 'Prohibition on the Use of Discretionary Clauses Model Act,' which, as its name implies, urges states to adopt legislation that prohibits discretionary clauses in health insurance contracts." Davis v. Unum Life Ins. Co. of America, 2016 WL 1118258, *3 (E.D. Ark. Mar. 22, 2016)(quoting Joshua Foster, *ERISA, Trust Law, and the Appropriate Standard of Review: A De Novo Review of Why the Elimination of Discretionary Clauses Would Be an Abuse of Discretion*, 82 St. John's L. Rev. 735, 745 (2008)). "'As of 2015 . . . nearly 25 states either have or are in the process of banning discretionary clauses in insurance policies subject to ERISA.'" Davis, 2016 WL 1118258, *3 (quoting Joel Meyer & Mark DeBofsky, *Discretionary Clauses in ERISA Health and Disability Plans—Are They Still Viable?*, Bloomberg BNA (2015)). "While courts have consistently recognized the legitimacy of discretionary clauses, they have also consistently upheld state efforts to ban them." Id. Every Circuit Court to address similar state insurance regulatory prohibitions, including the Sixth Circuit, has held the prohibitions enforceable. See American Council of Life Insurers v. Ross, 558 F.3d 600, 608 (6th

4

Cir. 2009)("Michigan's [insurance] rules do not conflict with ERISA's civil enforcement provisions; thus, they are not removed from ERISA's savings clause on this basis."); Fontaine v. Metro Life Ins. Co., 800 F.3d 883 (7th Cir. 2015)(rejecting preemption challenge to Illinois insurance law); Standard Ins. Co. v. Morrison, 584 F.3d 837, 849 (9th Cir. 2009)("Accordingly, we agree with the district court that the Commissioner's practice of disapproving discretionary clauses is not preempted by ERISA's exclusive remedial scheme.").

"On December 19, 2012, the Arkansas Department of Insurance adopted Rule 101, which prohibits the use of discretionary clauses in disability income policies." Davis, 2016 WL 1118258, *3. Rule 101 provides in relevant part:

> No policy, contract, certificate or agreement offered or issued in this State providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

Ark. Admin. Code 054.00.101-4 ("Rule 101"). Further, Rule 101 prohibits the inclusion of discretionary clauses in "all disability income policies issued in [Arkansas] which are issued or renewed on and after March 1, 2013." Ark. Admin. Code 054.00.101-7.

**2. Rule 101's Application to the Policy**

Defendant maintains that Rule 101 does not apply to this case because the Policy was issued prior to March 1, 2013, and Plaintiff's date of disability and the date she began receiving benefits under the Policy both occurred prior to the alleged January 1, 2014 renewal date of the Policy. Defendant argues that because Plaintiff's entitlement to benefits under the Policy vested prior to the alleged renewal date of January 1, 2014, the Arkansas regulation does not apply to this case. (DN 20, Reply at 1-2.) Defendant further argues that Plaintiff incorrectly assumes that the anniversary date of the Policy is the renewal date of the Policy. Defendant essentially

5

contends that the Policy in effect at the time Defendant denied Plaintiff's benefits was the original Policy effective January 1, 2013. (Id.)

Here, the Policy was issued on July 23, 2012, became effective January 1, 2013, and contains "Policy Anniversaries" of "each January 1st beginning in 2014." (ADM 3.) Plaintiff's date of disability was April 20, 2013; Plaintiff began receiving benefits under the Policy effective November 2, 2013; and Liberty Life terminated Plaintiff's insurance benefit on November 1, 2014.

Contrary to Defendant's argument, Plaintiff's claim did not arise until November 1, 2014, when Liberty Life terminated her insurance benefits. See, e.g., Treves v. Union Sec. Ins. Co., LLC, 2014 WL 325149, *2 (W.D. Wash. Jan. 29, 2014)(a court is "not concerned with when the plan took effect, but rather the state of the law at the time of the 'legally operative denial' of benefits."). The Court does not examine the insurance policy in place at the time Plaintiff's entitlement to benefits vested. Instead, the Court examines the insurance policy in effect at the time the benefits were terminated. Id. In the present case, it is undisputed that Liberty Life terminated Plaintiff's long term disability insurance benefits on November 1, 2014.

Rule 101 applies to "all disability income policies issued in this State which are issued or *renewed on and after March 1, 2013.*" (Rule 101, § 7 (emphasis added).) As such, because the effective date of the Policy is January 1, 2013, Rule 101 only applies if the Policy renewed after March 1, 2013. Plaintiff argues that the "anniversary date" of the Policy is a "renewal date." However, the Court is unable to find any contractual provision specifying that the anniversary date constitutes a renewal of the Policy. In fact, the Policy lacks any reference to a renewal date at all, or that renewal of the Policy is necessary to keep it in force. Section 6 of the Policy, entitled "Termination Provisions," provides that "Liberty may terminate this policy or any

coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months." (Policy §6(4); ADM 40.) Thus, it appears to the Court that the Policy continues in force until it is terminated.

The Court's decision is consistent with district court's opinion in Rogers v. Reliance Standard Life Insurance Co., 2015 WL 2148406 (N.D. Ill. May 6, 2015). In Rogers, the district court applied an arbitrary and capricious standard of review based on similar policy language. finding that:

> [T]he Court does not find that the Policy renews every August 1st to include any new regulations not imposed on, or before the August 1, 2010 date that the Policy became effective, simply because the Policy mentions an "Anniversary Date." The Court finds that the Policy lacks any specific language referring to an annual renewal and no evidence exists showing the parties agreed to material or significant changes to the Policy between August 1, 2010 to the present. The discretionary clause is, therefore, valid.

Id. at 7. Accordingly, because the Policy did not renew on or after March 1, 2013, Rule 101 does not apply to the Policy.

The case relied upon by Plaintiff, Cerone v. Reliance Standard Life Ins. Co., 9 F. Supp. 3d 1145 (S.D. Cal. 2014), in support of his argument that the "anniversary date" of the Policy is the "renewal date" is distinguishable from the present case. In interpreting the California statute banning discretionary clauses, the district court in Cerone held that "an insurance policy that is 'continued in force on or after the policy's anniversary date' is therefore renewed." Id. at 1149. Unlike Arkansas Rule 101, the California statute defined the term "renewed" as "continued in force on or after the policy's anniversary date." Id. Because Arkansas's Rule 101 does not define the term "renewed," in the same manner as the California statute, Cerone offers no guidance in this case.

For these reasons, the Court finds that Rule 101 does not apply to the Policy.

7

## B. Exercise of Discretionary Authority

Having concluded that the Policy expressly grants Liberty Life discretionary authority to determine eligibility for benefits, the Court must next decide whether the administrator actually exercised that discretion. Plaintiff maintains that Liberty Life did not exercise discretion but rather relied on contract employees from Liberty Mutual Insurance Company ("Liberty Mutual") to make the claim decisions. Plaintiff contends that these contract employees are not the plan administrator and have not been delegated discretionary authority.

Here, the September 22, 2014, claim denial letter was written by Rhonda Eubanks, Disability Case Manager, and the April 15, 2015, final claim denial letter was written by Lindsay Mack, Appeal Review Consultant. While acknowledging that these individuals were paid by Liberty Mutual, Defendant maintains that these individuals were acting as agents for, and under the direction and control, of Liberty Life. In support of this argument, Defendant submits the affidavit of Michael Garvey, Assistant Secretary of Liberty Life. Garvey explains that Liberty Life does not have direct employees, but instead pays Liberty Mutual under the terms of a service agreement to provide Liberty Life with personnel and equipment. (Garvey Aff. ¶ 5.) In return, Liberty Life reimburses Liberty Mutual for the cost of personnel, equipment, services and facilities provided under the agreement and for any other services. (Id.) Garvey avers that the personnel that are assigned to Liberty Life under the services agreement "provide claims and case management services to Liberty Life." (Id. at ¶ 6.) According to the affidavit of Garvey, the individuals who work for Liberty Life under the service agreement "generally devote 100 % of their time to working for Liberty Life" and are under the control and ultimate supervision of the officers and board of directors of Liberty Life. (Id.) Further, the record reflects that the letters Plaintiff received from Eubanks and Mack notifying her of her benefit termination were on

Liberty Life letterhead and directed her to send any request for review of the denial of benefits to Liberty Life.

Two courts have recently addressed the same issue concluding that the claims personnel were acting as agents for Liberty Life with respect to the claims determination in those cases. Lucas v. Liberty Life Assurance Co. of Boston, No. 11-4417 (E.D. Pa. March 28, 2014)(Exhibit C to DN 15); Cipriani v. Liberty Life Assurance Company of Boston, 2015 WL 5923454, *6 (M.D. Penn. Oct. 9, 2015). In Lucas, the court made the following findings:

> Based on this evidence, we are satisfied that Liberty Life has established that it, not Liberty Mutual, made the benefit determination at issue here. While it is true that the main individuals that were involved in determining whether Plaintiff was eligible for benefits received their paychecks from Liberty Mutual, it is apparent throughout the administrative record that those individuals were acting as agents of Liberty Life; sending correspondence on behalf of Liberty Life and ultimately being supervised by Liberty Life. . . . There is simply no evidence that Liberty Mutual had any involvement in the benefits determination, other than issuing paychecks to the agents of Liberty Life. Thus, the ultimate benefit determination was made by Liberty Life, and it follows that the appropriate standard of review of Liberty Life's determination is the deferential arbitrary and capricious standard.

Lucas, No. 11-4417, at *15-16. The Court agrees with these decisions and finds that the ultimate benefit determination was made by Liberty Life.

Having found that Liberty Life had discretionary authority under the Policy and it exercised that authority in terminating Plaintiff's benefits, the Court concludes that the appropriate standard of review of this matter is the arbitrary and capricious standard.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Liberty Life Assurance Company of Boston, for application of the arbitrary and capricious standard of review [DN 15] is **GRANTED**. The Court finds that Rule 101 does not

apply to the Policy, and the arbitrary and capricious standard of review applies to Liberty Life's administrative determination.

The Court **DENIES** Plaintiff's request for attorneys' fees and costs incurred in responding to the motion. The Court does not believe that the Defendant brought the motion in bad faith, vexatiously, wantonly, or for oppressive reasons.

**IT IS FURTHER ORDERED** that the motion by Defendant for leave to file supplemental authority [DN 37] is **GRANTED**. The Court considered Rose v. Liberty Life Assur. Co. of Boston in making its decision.

**IT IS FURTHER ORDERED** that the objection by Defendant to Magistrate Judge Brennenstuhl's Order granting in part Plaintiff's motion for leave to conduct discovery [DN 29] is **OVERRULED** for the reasons set forth in the Magistrate Judge's January 19, 2016 Order.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

May 2, 2016