UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00071-JHM-HBB

PAULETTE OWENS                                                                                PLAINTIFF

VS.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON                                                                      DEFENDANT

# MEMORANDUM, OPINION AND ORDER

## BACKGROUND

Before the Court is the motion of Defendant Liberty Life Assurance Company of Boston ("Liberty") for reconsideration, or, in the alternative, for an extension of time in which to provide discovery responses (DN 47). Plaintiff Paulette Owens ("Owens") has responded in opposition (DN 49), and Liberty has filed its reply (DN 52). The matter stands submitted to the undersigned Magistrate Judge for ruling.[1]

---

[1] Liberty's reply pleading refers to the undersigned as "Magistrate." The office of magistrate in Kentucky is an elected non-judicial position of local county governance. The Judicial Improvements Act of 1990 designed the judicial office of the federal court as that of "United States Magistrate Judge." While no offense was intended or taken, the correct title is "Magistrate Judge" or simply "Judge."

# NATURE OF THE MOTION

In a previous motion Owens moved for permission to undertake discovery in this case (DN 14). Liberty opposed the motion (DN 18). The undersigned partially granted and partially denied the motion in DN 26.[2] With regard to Owens' Interrogatory number 15, the undersigned ruled as follows:

> Interrogatories number 14 and 15 seek information about the overall nature of Liberty's relationship with the medical opinion providers, including the number of opinions they have provided to Liberty, the total compensation paid to them by Liberty, and the number of opinions which support or did not support Liberty's decision to deny a claim (DN 14-2 p. 16-17). Interrogatory number 15 goes further in the inquiry and seeks information specific to the individuals providing a medical opinion (Id.).
>
> In opposing the requests for information, Liberty acknowledges that a recent decision from the Eastern District of Kentucky, Brainard v. Liberty Life Assur. Co. of Boston, No. 6:14-cv-110, 2014 U.S. Dist. LEXIS 178492 (E.D. Ky. Dec. 30, 2014), permitted discovery of statistical information, but argues, in essence, that the court was simply mistaken in arriving at that conclusion and the ruling imposed an unreasonable hardship on it in assembling the information. Notwithstanding Liberty's dissatisfaction with the state of the law, such discovery regarding third-party medical reviewers is, for the most part, permitted. "ERISA claimants may seek discovery related to 'third-party vendors whose opinions or reports may have been unduly influenced by financial incentives.'" Davis, 2015 U.S. Dist. LEXIS 158313, *23 (W.D. KY., Nov. 24, 2015) (quoting Gluc v. Prudential Life Ins. Co. of Am., 309 F.R.D. 406, 410 (W.D. Ky. 2015)). This information includes contractual connections with the provider and financial compensation paid to the reviewing entity. Id. It also includes statistical information about numbers of files sent to reviewers and the number of denials which result. Id. at *28-30. Discovery in this area, however, is limited to those reviewers who actually participated in the determination of Owens' claim. As the court in Pemberton noted: "the plaintiff's request for the statistical data has been sufficiently narrowed to include only those reviewers who were involved in the plaintiff's claim." Pemberton, 2009 U.S. Dist. LEXIS 2070, at *10.

---

[2] Liberty filed an objection to the order at DN 29. Chief District Judge Joseph H. McKinley, Jr. overruled the objection at DN 42.

> Portions of Owens' interrogatory number 15, however, include requests for information which are impermissible "reviewer credibility" inquiries. These requests are the process by which the reviewer was selected and the steps taken to ensure the reviewer has appropriate medical training. "These credibility-type requests are unlikely to lead to evidence of any claim of bias or conflict of interest." Mullins, 267 F.R.D. at 514 (quoting Raney v. Life Ins. Co. of N. Am., No. 08-cv-169-JMH, 2009 U.S. Dist. LEXIS 34098, at *9 (E.D. Ky. Apr. 20, 2009)). For this reason, subparts (a) and (b) of interrogatory number 15 are disallowed. As to all of Owens' requests, Liberty is not required to provide information for more than the last ten years. See Davis, 2015 U.S. Dist. LEXIS 158313, at *30. Consequently, Owens' motion for discovery under interrogatory numbers 12-15 is GRANTED in part and DENIED in part. Only information related to the medical reviewers involved in Owens' claim is relevant. Subparts (a) and (b) of interrogatory number 15 are disallowed. Liberty need not provide information that spans a time period of longer than ten years.

(DN 26, p. 16-17) (emphasis in original).

In the present motion, Liberty seeks reconsideration of the portion of the order directing its response to interrogatory 15. That interrogatory requested information about opinions from medical reviewers and specifically asked that Liberty state the number of medical opinions the reviewer provided to Liberty that <u>did</u> support Liberty's decision to deny a claim and the number of medical opinions the reviewer provided that <u>did not</u> support Liberty's decision to deny a claim (DN 14-2, p. 17 at interrogatory no. 15, ¶¶ (e) and (f)).

Liberty argues that the requested discovery is not proportional to the needs of the case, as required by Fed. R. Civ. P. 26(b). Liberty asserts that the number of times a reviewing physician's opinion does or does not support Liberty's denial of a claim is "of limited importance to determining whether or not Liberty's decision to deny benefits was arbitrary or

3

capricious" (DN 47-1, p. 2).  Liberty explains that it requests a physician's opinion as to the claimant's medical impairments and conditions and any restrictions or limitations imposed by those impairments or conditions.  This opinion, Liberty contends, is only part of the information considered by the disability case manager or appeal review consultant in arriving at a benefits decision.  Liberty notes that not all cases are referred to a physician for an opinion, as there may be sufficient evidence of disability, such as the reports of a treating physician, that a consulting physician opinion is unnecessary.  Additionally, there are instances where an initial opinion of non-disability is overturned upon submission of additional evidence from the claimant.  Finally, Liberty notes that each claim presents unique facts and circumstances.  For these reasons, Liberty contends that any effort to draw a statistical correlation is unreliable and the importance of the information in resolving the case is nominal.  Liberty additionally argues that the amount in controversy in the case is low, in light of Owens' receipt of Social Security Disability benefits.  Liberty estimates the amount in controversy at $15,589.

Finally, Liberty argues that the burden of producing the information is disproportionate to the needs of the case.  Liberty contends it does not maintain independent records regarding the number of times a reviewing physician does or does not support denial of claim and, as such, an individual file-by-file review would be required.  In this case, Liberty would be required to manually review 4,332 medical opinions during the relevant period.

Owens responds in opposition to Liberty's motion that it does not satisfy the criteria for reconsideration because it is not based on a change in controlling law, new evidence or the need to correct a clear error or manifest injustice.[3]  To the contrary, Owens argues that Liberty made the same general argument in opposition to the original motion, and lost.  To the extent Liberty

---

[3] Liberty did not specify the civil rule under which it advanced its motion.  Owens characterizes Liberty's motion as one under Fed. R. Civ. P. 59, however, non-final orders are challenged under Rule 54(b).  *See* Reed, *infra,* at *7, fn. 3.

offers detailed information regarding the number of files to be reviewed and the time required for review, Owens contends that Liberty could, and should, have provided this information in the original opposition. Finally, Owens disputes Liberty's assessment of the amount in controversy in the case, and calculates a claim in excess of $252,000.

In reply, Liberty notes that its original opposition to Owen's request for discovery included an estimation that it would need to conduct a file-by-file review of over 990,000 files to answer interrogatory number 15, and that this was not "proportional to the needs of the case." Once Liberty's objection to the order granting discovery was overruled, and its obligation to respond to interrogatory number 15 was clear and defined, Liberty states that it ascertained that it would in fact have to review 4,332 claim files in order to provide the requested statistical information. As such, this constitutes "newly discovered evidence," and a proper basis upon which to ask for reconsideration.

## Discussion

Owens has accurately framed the threshold inquiry as one of whether Liberty's motion satisfies the criteria required for reconsideration. This Court recently outlined the relevant legal principles in Reed v. Gulf Coast Enters., No. 3:15-CV-00295-JHM, 2016 U.S. Dist. LEXIS 95183, *6-7 (W.D. Ky. Jan. 6, 2016):

> The Sixth Circuit recognizes that a district court has authority both under common law and under Rule 54(b) "to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Id. (citing Reich v. Hall Holding Co., 990 F. Supp. 955, 965 (N.D. Ohio 1998)); see also United States v. Lexington-Fayette Urban County Gov't, No. 06-386-KSF, 2008

5

U.S. Dist. LEXIS 77478, at *3, 2008 WL 4490200, at *1 (E.D. Ky. Oct. 2, 2008); Edmonds v. Rees, No. 3:06-CV-P301-H, 2008 U.S. Dist. LEXIS 61839, at *7, 2008 WL 3820432, at *2 (W.D. Ky. Aug. 13, 2008). A motion to reconsider under Rule 54(b) may not, however, "serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought." Owensboro Grain Co., LLC v. AUI Contr., LLC, No. CIV.A. 4:08CV-94-JHM, 2009 U.S. Dist. LEXIS 18025, at *6, 2009 WL 650456, at *2 (W.D. Ky. Mar. 10, 2009) (quoting Jones v. Casey's Gen. Stores, 551 F. Supp. 2d 848, 854-55 (S.D. Iowa 2008)). "Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." Ne. Ohio Coal. for Homeless v. Brunner, 652 F. Supp. 2d 871, 877 (S.D. Ohio 2009). "The moving party has the burden of showing that reconsideration is warranted, and that some harm or injustice would result if reconsideration were to be denied." Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp.2d 82, 85 (D.D.C. 2009).

Here, Liberty was aware that it would have to review a significant number of files in order to respond to interrogatory number 15 when it advanced its initial opposition to Owens' motion for discovery. Liberty argued that, in another case[4] in which it was required to provide information about third-party medical reviewers, "it took Liberty several months to pull together the statistical information regarding the medical reviewers in Brainard due to the fact that information regarding the medical reviewers is kept in the individual claim files and are not readily – or even reasonably – available" (DN 18, p. 22). In support of this argument of undue burden, Liberty cited answers to interrogatories it attached as an exhibit to its memorandum (DN 18-1). Those interrogatory answers were from a case captioned Suzette Scott-Warren v. Liberty Life Assur. Co. of Boston, No. 3:14-cv-738-CRS (W.D. Ky.), in which Liberty responded to a similar interrogatory with an estimate that it would have to review "well over 990,000 claim

---

[4] Brainard v. Liberty Life Assur. Co. of Boston, No. 6:14-cv-110, 2014 U.S. Dist. LEXIS 178492 (E.D. Ky. Dec. 30, 2014)

files" (DN 18-1, p. 14). Thus, Liberty knew when it filed its opposition to the motion for discovery that it would have to review a significant number of files at significant expense.

However, despite this knowledge, Liberty only mounted opposition based on what it had experienced in other cases and did not undertake an evaluation of what would be required in this case until after its objection had been overruled. Liberty previously advocated that the burden of production is disproportionate to the value of this case, both in the response to Owens' motion for discovery and in its objection to the order granting discovery.[5] The precise number of files which Liberty has subsequently determined it must review in order to respond to interrogatory number 15 is not "new evidence" which was previously unavailable.

The undersigned concludes that Liberty is not entitled to reconsideration of the portion of the prior order granting discovery under Owens' interrogatory number 15. In anticipation of the possibility that the motion might not be granted, Liberty has requested in the alternative that it be granted an additional extension of 75 days to August 15, 2016 in which to respond to the interrogatory. Due to the time permitted for the response and reply to the motion, the requested extension has already expired. It is therefore unclear if additional time is required. A conference call will be scheduled to resolve this issue.

---

[5] Liberty argued in the objection that "Liberty does not maintain the information sought by Pl in any type of aggregate form. Thus, in order to respond to the request, Liberty Life would have to perform a file-by-file review of all the claims submitted to Liberty Life. Between 2009 and 2013 alone, there were over 990,000 disability claims submitted to Liberty Life that would have to be reviewed" (DN 29, p. 14).

**ORDER**

WHEREFORE, Defendant's motion for reconsideration and, in the alternative, for extension of time is DENIED IN PART and DEFERRED IN PART. The motion for reconsideration of DN 26 is DENIED. The motion for extension of time to respond to interrogatory 15 is DEFERRED pending a conference call to discuss the issue.

**H. Brent Brennenstuhl
United States Magistrate Judge**

August 25, 2016

Copies: Counsel