**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:15-CV-00071-JHM-HBB**

**PAULETTE OWENS**                                                                  **PLAINTIFF**

**VS.**

**LIBERTY LIFE ASSURANCE**
**COMPANY OF BOSTON**                                                          **DEFENDANT**

## MEMORANDUM AND OPINION
### BACKGROUND

Before the Court is the motion of Defendant Liberty Life Assurance Company of Boston

("Liberty") requesting entry of a protective order of confidentiality (DN 60).  Plaintiff Paulette

Owens ("Owens") responded (DN 64), and Liberty filed a reply (DN 69).  This matter is ripe for

adjudication.

This is an ERISA disability benefits case.  Owens has been granted specified discovery

into issues that may indicate a conflict of interest affecting Liberty's coverage decision (DN 26).

Liberty initially requested a protective order covering certain documents relating to personnel

matters and alleged trade secrets (DN 48).  The undersigned denied the initial motion because

Liberty did not adequately demonstrate that public disclosure of the information at issue would

result in a "clearly defined and very serious injury" (DN 54 at 5 (quoting Mitchell v. Home

Depot U.S.A., No. 3:11-CV-332, 2012 U.S. Dist. LEXIS 82562, *4-5 (W.D. Ky. June 13,

2013)).

The undersigned did not foreclose Liberty from filing a subsequent request with a more definite statement outlining the injury it would suffer if these documents are not kept confidential.  The motion now under consideration is Liberty's subsequent request.  For the reasons set forth below, the motion is granted.

In its motion, Liberty identifies six categories of information it wishes to keep confidential.  These include:

> (a) customized claims handling policies, procedures, and exceptions;
>
> (b) bonus plan for employees, as reflected in Liberty's Variable Incentive Plan;
>
> (c) organizational structure of its claims and appeals units;
>
> (d) contracts with third party vendors;
>
> (e) contracts, including financial compensation, with its consulting physicians; and
>
> (f) training curricula provided to specific employees

(DN 60-1 at p. 2).

Liberty asserts these materials should be protected both because they qualify as trade secrets and because there is good cause (Id. at p. 1).  Notably, Liberty is not refusing to produce these documents altogether, but rather is seeking to do so under a protective order (Id.).  In support of its motion, Liberty filed the affidavit of Paula McGee, litigation manager for Liberty (DN 63-1).  The affidavit asserts, in short, that the disability insurance market is competitive, that policies, procedures, contracts, bonus plans, organizational structure, and similar information is how an insurance company gains a competitive advantage, and that, were

2

Liberty's competitors to gain ready access to this information, they would enjoy an unfair advantage over Liberty (Id. at pp. 1-4).

In response, Owens argues that the burden is on Liberty to show good cause for protecting each document (DN 64 at p. 2). Additionally, Owens contends Liberty has provided only conclusory allegations with no support for its argument that the documents are trade secrets (Id. at p. 3). Finally, Owens argues that whatever harm that might befall Liberty if these documents are not protected is outweighed by the public's interest in open judicial proceedings (Id. at p. 7).

DISCUSSION

Despite this Court's recent explanation of the marked distinction between an order issued to ensure the confidentiality of certain documents as compared with an order sealing the court's docket (DN 54 at p. 3), Owens has again conflated these independent concepts. The undersigned again notes that the Sixth Circuit has recently discussed this issue, explaining that the public's interest in open judicial proceedings only becomes compelling when a party attempts to seal documents in the court record. Rudd Equip. Co., Inc. v. John Deere Const. & Forestry Co., 834 F.3d 589, 593-94 (6th Cir. 2016) (internal quotations and citations omitted). This heightened standard does not apply to the ordinary trading back and forth of documents during discovery. Id. at 593.

Documents exchanged in response to interrogatories and requests for production are not part of the court record. They only become part of the record if they are used by a party during the proceedings or if the court so orders. Fed. R. Civ. P. 5(d)(1). Liberty's motion does not request that this Court seal its confidential documents when entered into the record. It is instead

3

asking that documents remain confidential during discovery.  When and if the documents are designated as part of the record, the parties can at that time litigate the public's interest in accessing those individual documents.

Having articulated this distinction, the undersigned addresses Liberty's motion.  A party may move for a protective order requiring that trade secrets or other confidential information not be revealed or be revealed in a specified way. Fed. R. Civ. P. 26(c)(1)(G).  There is a presumption that pre-trial processes will remain public, but a party can overcome the presumption by demonstrating that failing to protect the information will result in "clearly defined and very serious injury."  Mitchell, 2012 U.S. Dist. LEXIS 82562 at *4 (internal quotations omitted).  Conclusory allegations will not satisfy this burden, and a party must allege some specific competitive harm.  Id. at 4-5 (citations omitted).

The affidavit of Paula McGee alleges several examples of potential serious harm to Liberty if the types of documents at issue are not designated confidential.  First, McGee outlines the lengths to which Liberty goes to maintain the confidentiality of this material outside these proceedings.  Claims handling and bonus structure materials are located on Liberty's intranet, which can only be accessed by an authorized user with a password (DN 63-1 at p. 2 ¶ 10).  Liberty's customized contracts with third-party vendors are maintained at Liberty's corporate offices, and only employees with a legitimate need to know the contracts' contents are permitted to access them (Id. at p. 3 ¶ 13).

Moreover, Liberty has invested substantial time and resources in preparing these materials (Id. at p. 1 ¶ 2).  As a result, Liberty has identified three avenues by which dissemination of this information could lead to a serious competitive disadvantage.  First,

4

Liberty's competitors could copy this information and adapt it for their own use (Id. at p. 4 ¶ 17).

Second, in copying the materials, the competitor would save a substantial amount of resources on

the front end of developing its business (Id.).  And finally, Liberty would not be compensated for

the use of its proprietary information (Id.).

McGee's affidavit offers the evidence needed to establish that leaving these documents

unprotected could result in serious harm.  Plaintiff's argument that the affidavit contains only

conclusory allegations is unavailing.  Liberty has set out a plausible scenario where

dissemination of its confidential material could result in serious damage to its business.  Nothing

further is necessary.

Liberty further alleges the types of documents at issue constitute trade secrets.  A trade

secret:

> (a) Derives independent economic value, actual or potential, from
> not being generally known to, and not being readily ascertainable
> by proper means by, other persons who can obtain economic value
> from its disclosure or use, and
>
> (b) Is the subject of efforts that are reasonable under the
> circumstances to maintain its secrecy.

Ky. Rev. Stat. Ann. § 365.880(4).

Thus, information must satisfy four criteria to qualify as a trade secret.  First, the

information must derive its value as a result of its confidential nature.  Second, a competitor must

be able to realize an advantage from obtaining the information.  Third, the holder of the

information makes efforts to maintain its confidentiality.  And finally, those efforts are

reasonable.

Here, the evidence discussed above from McGee's affidavit leads to a conclusion that the types of information identified in Liberty's motion qualify as trade secrets. First, all disability insurance companies perform similar services. Thus, any market advantage Liberty enjoys is derived from how it handles claims, compensates and trains its employees, and manages its contracts with third parties. Second, developing a successful system requires both time and financial resources. It follows that, were a competitor to obtain a model of a successful system that it could implement immediately, the competitor would realize an advantage.

Moreover, as mentioned above, McGee's affidavit discusses how Liberty protects this information. Specifically, McGee states:

> 6.    Statements are posted on Liberty Life's intranet site and are contained in the Claims Handling Materials themselves prohibiting any dissemination or unauthorized use of any information contained on the intranet.

> 7.    Specifically, each page on Liberty Life's intranet contains the following language: "02016 Liberty Mutual Insurance Company[.] The information contained herein is considered proprietary and may contain trade secret or competitively sensitive information and therefore should not be disseminated outside Liberty Mutual Group."

> 8.    Each policy, procedure, and exception comprising Liberty Life's Claims Handling Materials contains the following additional language: "All information contained on this Group Benefits Disability Claims intranet site is Proprietary-Trade Secret and for the internal use of authorized users of Group Benefits Disability claim ONLY. Copying, printing, or reproducing in any form without permission is prohibited."

> 9.    Liberty Life's policies with regard to dissemination of confidential information are given to new employees when they are hired.

6

> 10.    Liberty Life's computer systems and programs require user identifications and passwords; Liberty Life's employees must agree not to disclose their passwords to others.  Access to its intranet is provided only to employees who are able to access the information via its password-protected intranet system.
>
> 11.    The fact that the documents/information identified in numerical paragraphs 2 and 3, above, are available through Liberty Life's private intranet system constantly reminds Liberty Life employees that this information is to be kept strictly confidential,

(DN 63-1 at p. 2 ¶¶ 6-11).

It is clear that Liberty has undertaken efforts to maintain confidentiality.  The issue then is whether these efforts were reasonable.  *See* Ky. Rev. Stat. Ann. 365.880(4)(b).  Plaintiff argues that blanket password policies for the company intranet is not sufficient to meet this threshold (DN 64 at p. 4-5).  This argument ignores the fact that each page within the intranet itself contains a confidentiality reminder.  And, employees are given Liberty's confidentiality policies when they are hired.

Owens additionally asserts that, because employees are legally entitled to discuss their bonuses among themselves, and because employees must necessarily list salary information on applications for loans and credit cards, that the bonus structure cannot be considered confidential (Id.).  This claim confuses individual salaries with an overall structure for providing incentive bonuses.  Listing one's salary on a credit card application is in no way analogous to telling the credit card company how your employer structures compensation for you and all of your coworkers.

The requirement for information to qualify as a trade secret is that efforts to protect confidentiality are reasonable, not that they are impenetrable or fail-safe.  The undersigned finds

Liberty's efforts reasonable and concludes Liberty has met its burden and established that the information in question qualifies for trade secret protection.

## **CONCLUSION**

For the forgoing reasons, Liberty's motion (DN 60) for a protective order of confidentiality is granted.  By separate order, the court will grant the motion and set for the conditions of the protective order.

Copies:        Counsel